The second case for argument this morning is Aurand v. Colvin. Mr. Aurand. Your honors, counsel, ladies and gentlemen, may it please the court. The claimant at one point was so depressed that he lit himself on fire in an attempt to commit suicide. As a result, he burned part of his body in hand-to-half skin grafts. These skin grafts, according to an examiner, caused reduced sensation to light touch and pinprick sensation in his thumbs and index fingers. At the hearing, the vocational expert testified that a reduction to occasional feeling would preclude work. The administrative law judge did not take into consideration the reduced sensation to light touch and pinprick in her RFC, residual functional capacity, the estimate of what this individual could perform. In the same examination as revealed the reduced sensation to light touch and pinprick, the claimant also had reduced range of motion in his shoulders and neck and reduced arm and grip strength. The other deficit in the RFC had to do with the mental component. Dr. Gokhali, who was the plaintiff appellant's psychiatrist, found that the claimant was virtually incapable of maintaining attention and concentration, and in his ability to keep a schedule, be punctual, maintain regular attendance. Those deficits preclude work. The examiner, the commissioner's own examiner, found that the claimant, plaintiff appellant, was markedly limited in attention, concentration, and calculation. A marked limitation in attention and concentration is halfway to meeting a listing. And you meet a listing, that ends the inquiry. If you don't meet a listing, then the inquiry has to go on farther to consider the RFC and whether it permits work. The commissioner's examiner found that plaintiff appellant had a poor fund of information, had impaired abstract conceptual reasoning, was borderline intellectual, and had a global assessment of functioning of 40. Now, 40 is beyond serious. It's at least marked. Maybe it's extreme. And Dr. Gokhali's global assessment of functioning was 50, which is serious. It's beyond moderate. The administrative law judge found there was only a moderate impairment in concentration, persistence, and pace, and she did not give good reasons for discounting the opinion of Dr. Gokhali and her own examiner. The basic reason she gave was, well, one said 40 and one said 50. Well, that's immaterial. Both were beyond moderate. What could he do? What were his skills? He was a machinist of sort, if I recall correctly. Was this before he burned himself? Pardon me? Before he burned himself? Yes. And he did attempt work after he had burned himself, but he failed. One time he failed to pass a physical, and another time he was let go because he made too many mistakes. So we have sort of an empirical scientific demonstration that he couldn't work because he couldn't pass the physical, and when he was permitted to try, he made too many mistakes, which is consistent with the mental opinion of Dr. Gokhali and the commissioner's examiner. So she had both mental and physical? Yes, both, yes. The RFC was deficient both in its mental and in its physical component. What did the VE say, or is there one? Well, the VE said that, well, of course, if you can't keep a schedule or you can't work a full day or you can't keep a persistent pace or maintain attention and concentration, any of those things precludes work. And the VE also indicated that if a limitation to occasional feeling were added to the RFC that the ALJ found, that would preclude work. Well, did he say he could do anything? Usually they get down to that level we were talking about in this previous case, that a job nobody wants and no employer wants to do, but that's beside the point. Is there some capacity in the economy that he said he could do? If he had the limitations that I've spoken of, no. Okay, well, that's, I guess, where we are. Right. Any more questions about that issue? Well, you've already covered mental and physical. Well, there were also credibility issues, but we submit that the inconsistencies found by the administrative law judge were immaterial. Whether he injured his hand picking up a plate or trying to help his friend repair some implement doesn't make any difference. He didn't do it right. He couldn't do it right. Is he the one that worked on a tractor or something? He either worked on a tractor or he hurt his hand trying to pick up a plate. But working on a tractor for a few minutes or a few hours, that doesn't give rise to an inference that one can work a 40-hour week. And finally, here we have O'Connor Spinner once again. The district court would not follow this court's precedent in O'Connor Spinner. The administrative law judge found a moderate limitation in concentration, persistence, and pace and did not put it into her hypothetical or her residual functional capacity. Yeah, well, that's the last case. Right. And in my case, that's what happened. Was it the same person? Well, no, it's a different person, but... You're just comparing... The law is the same. Someone says you've got the same problem. Right, exactly. It's 2016 now. O'Connor Spinner came down in 2010, and the agency doesn't want to implement it at all. And the courts are spotty about implementing it. You mean this court or the A.J.'s? I meant the district court, not this court, of course. Oh, we're consistent. We hope. Are there any other questions that I can address? The A.J. didn't attempt to ascribe a GAS score. Did she? I don't recall that she did. She limited the mental impairment to moderate. Yeah, but not a score. I don't recall her giving a score. If she did, that would be the first ALJ I've ever seen give a score. That's usually for examiners and other physicians. You're in your rebuttal time. Pardon me? You're in your rebuttal time. You want to say something? Yes, thank you. All right. Counsel? Your Honors, may it please the Court? Chad Bedilli on behalf of the Commissioner. I guess I'll sort of address the arguments that counsel has made. The last one, the O'Connor-Spinner argument, I think might be the thorniest. We think that the government thinks that the Court should affirm for the reasons expressed in our brief and in the magistrate judge's very thorough 33-page opinion. But a little more attention is required for the O'Connor-Spinner sort of piece. I think if you look at O'Connor-Spinner, first, the argument that a finding in Step 3 requires the ALJ to present the specific phrase moderate concentration, persistence, or pace to the vocational expert has been rejected by this Court. It was rejected in O'Connor-Spinner. What's required is for the ALJ to give a translation to the vocational expert of those limitations that the record supports. And on a commonsensical reading of the ALJ's decision, it's clear that that's what happened here. What? Say that again? On a commonsensical reading of the ALJ's decision, it's clear that, and of the hypothetical that ultimately became the RFC because they're consistent, it's clear that the ALJ did present to the vocational expert all of those limitations that she thought were credible. And ultimately, if her finding was reasonable, then the Court shouldn't disturb it. But the other issue is the Court has said, and said in O'Connor-Spinner, that in most cases a finding of moderate concentration, persistence, or pace cannot be accommodated simply by a translation to simple repetitive tasks. It didn't say none. It said most. The URT, which followed after and which was also cited in Appellant's brief, used more caustic language in part because I think the Court was concerned with the specific facts of that case which were more damning, where the ALJ really seemed to have not grappled with evidence that suggested much greater limitations of concentration, persistence, or pace. In this case, we think the ALJ said exactly enough for the Court to be apprised that she did not think more limitations were required. When the ALJ discussed concentration, persistence, or pace at Step 3, she found that Mr. Orend had no more than moderate limitations, and then specifically took note of the fact that he himself testified that he could concentrate for one to two hours at a time, and that he had worked for two months. Now, it was a failed work attempt, but he said that he was fired because he was making too many mistakes, and did not allege that he couldn't concentrate on his work. And he sort of had no trouble, he didn't allege any trouble with the physical tasks. He did say, he did testify that he was not hired because he couldn't pass the physical, but the ALJ challenged that, and he ultimately admitted that it was not that, but because he was making too many mistakes. But you get a mental and a physical issue here, right? Yes, so that's another thing. Opposing counsel locks in on this notion that the consultative examiner, the physical consultative examiner in 2012, found decreased sensation to pinprick. But the examiner didn't translate that into any limitation, and the only medical opinions of record to speak on whether there were manipulative limitations said no. So the examiner herself in 2012 said that he had full strength in both arms, and that he had no grip limitations at all. And there's an earlier consultative examination from an earlier application for benefits that is during a period that the ALJ here did not adjudicate, because it was, it went final in 2011. There was a 2008 examination that showed that immediately in the aftermath of his burn incident, he had more limitations. He had only four or five strength in the extremities. He had greater grip limitations and so forth. But in 2012, in the period that was adjudicated by the ALJ here, there were no limitations in arm strength, no grip limitations. And the state agency reviewer, who is the only doctor of record to opine on whether there were manipulative limitations, said no. Noted the avulsion of the fingertip, but said it was not expected to cause any limitations that lasted more than 12 months, which is what's required by the regulations for them to be included in the RFC. Has he done any job that lasted for any period of time since all this, since the burn? I'm sorry? Since the burn. I mean, that seems to be when all this starts. Yes. And so has he had any evidence of being able to work in some capacity for any length of time? I mean, he has only worked for the, it looks like, for the two-month period. That ultimately became a failed work attempt. But the ALJ also, and I think this is really at the core of the remainder of the case, is that the ALJ's credibility inference was exceptionally strong. Opposing counsel seeks to minimize the individual statements that the ALJ discredited. But the ALJ, who is the fact finder, found like a litany of discrepancies between his testimony and the record, and then also his stepmother's testimony. And I mean, as the court is aware, a fact finder who sees one or two discrepancies might discount them. But a fact finder who sees 20 discrepancies. Well, 20 discrepancies from what he said he can't do when he's doing it somewhere else? Well, discrepancies between what he said his activity level was and what it actually was, what he could do, what he couldn't do, when and how he applied for work, whether his resume was updated, why he was let go from the job that he was let go from. Was there record evidence? There was something that said what he said he couldn't do, there's evidence that he did it? Yes, that's correct, Your Honor. That's what you're saying? That's correct, Your Honor. So, for example, he testified, he went every day to his sister's house to watch her kids. He testified that his mother almost always drove him. She, immediately following that, testified that he almost always walked. How far away was she? A couple blocks. Yeah, well, that's... But he said he could only walk one block at a time. So, it's... I agree with Your Honor, I would chuckle too, except that... Counsel, I only walk one block at a time myself, it's hard to walk two blocks at a time. I often do that myself, Your Honor. But, again, one proposition by itself wouldn't be enough. But I really invite the court to look at the magistrate judge's decision and at our brief, because it's really a litany of discrepancies. And taken together, it was very reasonable for the ALJ to say, okay, look, I don't find you to be a credible witness. And, in turn, then to say Drs. Gokhale and Kiefer, the consultative psychological examiner, who only saw him once, were too credulous of his statements about his inability to work and about his concentration impairments or limitations. And that is why those doctors were discounted. If you read the decision, it was specifically because they predicated, they based their opinions entirely on his subjective complaints. When you look at the scant notes from Dr. Gokhale, he only saw the appellant once before he opined. And his notes are almost entirely notations of Mr. Oran's statements, like I am doing X, I am doing Y. So there's no objective findings then? Correct. What did he do while he was looking at them? Just listening to him, writing down notes? I mean, I'm sure that he was doing whatever he was doing. No, I mean, examination, you know. I don't, I think it was, I mean, from the notes, what I can glean is that it was sort of talk therapy. I can't say that for sure. But the notes are handwritten, and I think there are only about two or three pages of them in the record. And so because of that, and because of the short nature of Dr. Gokhale's relationship with him before he opined, it was reasonable for the LJ First to say that he wasn't a treater. And this court has acknowledged in the past that one visit does not make a treatment relationship, which is meant to be a longitudinal picture. So what doctors examined him more than once and gave some objective findings that said he was okay or well enough? Well, there doesn't appear to be, there isn't a treating physician opinion in the record. So the physical examiner in 2012 gave findings that were consistent with the ability to work. With the exception of the pinprick, light-touched pinprick, which wasn't translated to a feeling limitation. She said that he had 505 strength, that he could ambulate normally, and so forth. And then you have the mental side. And then you have the mental side. And with respect to the mental, I think that it's amply evident from the Step 3 discussion by the ALJ and the discussion in the RFC section that she simply did not believe that further limitations were required, that they weren't supported. And if you look at the, and I'm worried that light is going to turn red in just a moment, but if you look at Parts 1 and 3 of Dr. Pittman's mental residual functional capacity assessment, the ALJ addressed both aspects of Part 3 and aspects of Part 1, and there are a couple of moderate limitation checkboxes in the Part 1 of the form that I see that my, may I have just a brief moment? Finish your sentence. I appreciate it. But the ALJ clearly, as reflected in our brief, addressed the limitations in Part 1 of the form that she thought were supported. And I think that the ALJ said enough, and I would ask the Court to affirm. Thank you. Thank you. May I start my rebuttal by referring to a question that was asked previously? There was no global assessment of functioning by the Administrative Law Judge. As far as translating things, it was the Administrative Law Judge's job to translate the limitation in pinprick and light touch to a RFC-type limitation, and that included getting a physician to do it. The, she had to articulate some reason for disregarding that finding. The examiner versus non-examiner. Well, the two examiners agreed that, the psychological examiners, Dr. Gokhale and the Commissioner's own examiner, agreed that Clayman's mental impairment was beyond moderate. Was beyond moderate. Beyond moderate, yes. Global assessment of functioning of 40 or 50, those are serious. Moderate would be 51 to 60. Serious is 40 to 50, or wait a minute, 41 to 50. And 40 is beyond serious. Is this a 1 to 100 type of rating? Yes, 1 to 100. And it's approximate. The, and as far as the O'Connor-Spinner issue is concerned, well, Varga, the Varga case came down while this case was being decided, and the Magistrate Judge brushed that off, too. So. Thank you. Thank you. Case will be taken under revising.